IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | § Criminal Action No. 4:24-CR-00143-ALM-AGD-1 |
| | § |
| BENDRICK LERAY HOUSTON | § |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Before the Court is a petition to revoke Defendant Bendrick Leray Houston's supervised release. The petition identifies six allegations where Defendant purportedly violated his conditions of supervision. Dkt. No. 2. The Court held a revocation hearing on April 22, 2025, to determine the veracity of the allegations. Rafael De La Garza represented Defendant. Heather Rattan represented the Government.

Defendant was sentenced on September 22, 2022, before The Honorable Diana Saldana of the Southern District of Texas after pleading guilty to the offense of Conspiracy to Transport and Move and Attempt to Transport and Move within the United States by Means of Transportation and Otherwise, an Undocumented Alien, a Class C felony. This offense carried a statutory maximum imprisonment term of 10 years. The guideline imprisonment range, based on a total offense level of 15 and a criminal history category of V, was 37 to 46 months. Defendant was subsequently sentenced below the guideline range to 21 months imprisonment and 3 years supervised release subject to the standard conditions of release, plus special conditions to include: substance abuse testing and treatment, alcohol abstinence, no possessing of a controlled substance, mental health testing and treatment, must follow medication regimen, and a $100 special assessment.

On July 11, 2024, the United States Probation Officer executed a Petition for Warrant or Summons for Offender Under Supervision (Dkt. No. 2, Sealed). In its Petition to revoke, the

Government alleges Defendant violated the following conditions:

1) <u>Mandatory Condition</u> Defendant must not commit another federal, state, or local crime. Specifically, the Government alleges on May 25, 2024, Defendant was arrested by officers with the Sherman, Texas, Police Department and charged with Criminal Trespass of a Habitation, a Class A Misdemeanor. John Holloway, the arresting officer, reported a homeowner had reported an unknown person in their backyard and at their front porch. The homeowner provided video surveillance of Defendant on his property. Defendant was released on May 26 on a $2,500 surety bond. As of the date of the Petition, this matter remained pending.

2) <u>Mandatory Condition</u> Defendant must refrain from any unlawful use of a controlled substance. Specifically, the Government alleges on June 26, 2024, Defendant appeared at the U.S. Probation Office in Sherman, Texas, as part of the random drug testing program. He submitted a urine specimen that tested positive for methamphetamine. A laboratory report from Alere Toxicology confirmed the drug test results. The Government further alleges on July 12, 2024, Defendant appeared at the U. S. Probation Office for a random drug test and tested positive for methamphetamine and fentanyl. He denied fentanyl use; however, he signed a violation admittance form and admitted he used methamphetamine on July 8, 2024, after passing a random drug test conducted at the U.S. Probation Office in Sherman, Texas, earlier that day.

3) <u>Special Condition</u> Defendant must submit to substance-abuse testing to determine if he has used a prohibited substance, and he must pay the costs of the testing if financially able. Defendant must not attempt to obstruct or tamper with testing methods. Specifically, the Government alleges on April 30, 2024, Defendant failed to appear at the U.S. Probation Office in Sherman, Texas, for drug testing as instructed.

4) <u>Special Condition</u> Defendant must not use alcohol. Specifically, the Government alleges on May 29, 2024, Defendant appeared at the U.S. Probation Office in Sherman, Texas, as part of his

participation in the random drug testing program and submitted a urine sample that was positive for alcohol. Defendant signed a violation admittance form and admitted he consumed an alcoholic beverage at lunch that day.

5) <u>Special Condition</u> Defendant must participate in an intensive outpatient substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise his participation in the program, including the provider, location, modality, duration, and intensity. Defendant must pay the costs of the program, if financially able. Specifically, the Government alleges on May 24 and 31, 2024, Defendant failed to participate in substance abuse treatment with NOC Counseling, Inc. in McKinney, Texas.

6) <u>Special Condition</u> Defendant must participate in a mental health treatment program and follow the rules and regulations of that program. The probation officer will supervise his participation in the program, including the provider, location, modality, duration, and intensity. Defendant must pay the costs of the program, if financially able. Specifically, the Government alleges on May 24 and 31, 2024, Defendant failed to participate in mental health treatment with NOC Counseling, Inc. in McKinney, Texas.

## HEARING TESTIMONY

Sherry Smith, United States Probation Officer, and Takiesha Houston, Defendant's spouse, were called as witnesses. Ms. Smith testified Defendant was initially doing "okay" under his supervision and that she approved for him to travel outside the district for work "so long as he made his sessions." Ms. Smith further testified that Defendant began to stop cooperating in his rehabilitation and she first notified the court in the Southern District of Texas before transferring to this district.

According to Ms. Smith, she had not recieved the video evidence mentioned in Allegation one (1), and thus, she was abandoning that Allegation.

Regarding Allegation (2), Ms. Smith testified that on June 26, 2024, Defendant appeared at the U.S. Probation Office in Sherman, Texas, and submitted a urine specimen that tested positive for methamphetamine. According to Ms. Smith, Defendant also submitted urine that tested positive for methamphetamine and fentanyl on July 12, 2024. On July 8, 20204, Defendant signed a violation admittance form for the use of methamphetamine, but he denied the use of fentanyl.[1] On cross, she admitted she did not know the amount of drugs Defendant possessed or ingested.

Regarding Allegation (3), Ms. Smith further testified that Defendant received a text on April 29, 2024, instructing him to appear at the U.S. Probation Office for a drug test on April 30, 2024. Ms. Smith stated Defendant replied "yes" to the message, but nevertheless failed to appear for testing. On cross, Ms. Smith reaffirmed her belief that Defendant responded to the text but could not rule out that someone else used his phone to respond.

Regarding Allegation (4), Ms. Smith then gave details of Defendant's positive test for alcohol on May 29, 2024. She stated Defendant signed a violation admittance form admitting to consumption at lunch that day. Defendant did not challenge this testimony.

Regarding Allegations (5) and (6), Ms. Smith further testified that Defendant failed to participate in a substance abuse and mental health treatment program when he failed to appear at the treatment facility on May 24 and 31, 2024. She stated that this was confirmed in an email sent by his treatment provider. She also testified that Defendant continued to fail to appear for treatment, but there was an incident where he showed up to counseling. Ms. Smith stated that during this incident, the counselor notified her of concerns about auditory and visual hallucinations that Ms. Smith determined "made him a threat to his household" and thus made her expedite obtaining a warrant. In response to questions from Defendant's counsel and the Court, Ms. Smith indicated that

---

[1] At the hearing, Defendant did not challenge the drug test showing fetenayl in his system, nor did he re-raise his claim that he never used fetnayl. However, since the recod is clearer with respect to his admitted methamphetimen use, this Report Court focuses on that drug.

4

she was unsure if these notices of missed session referred to missed sessions or make-up sessions because they use "monthly units" as to the amount of time Defendant had to appear for a session. She did not know whether it was weekly or biweekly, but Defendant appeared to continue attending counseling after this timeframe.

Defendant's counsel called Defendant's spouse, Takiesha Houston, to testify. Mrs. Houston is a critical care nurse and testified that during her relationship with Defendant, she attempted to get him help through her insurance when she noticed that he needed help, but otherwise, she did not know that he needed help. She stated that eighty-five percent of the time she was with him during his appointments. She never saw Defendant use alcohol or drugs. She stated that he would hide his use, causing a strain in their relationship. Her goal was to help Defendant get clean and become a productive member of society. According to Mrs. Houston, Defendant went through a rough patch during this time period, dealing family issues that affected his mental health. Mrs. Houston is no longer traveling for work and testified that she could make sure Defendant attends his commitments. She further stated Defendant's mom, who is a drug and alcohol counselor, would be able to help as well. She stated that Defendant did not inform them that he was having issues. She testified there has been a "dramatic change" for the positive while Defendant has been incarcerated (since July 22, 2024), which can be attributed to him receiving medication.

## **POSSESSION OF DRUGS**

As shown during cross-examination and from Defendant's attorney's argument, Defendant's primary contention was that while he admitted to using methamphetamine and acknowledged his urine tested positive for fentanyl, he never admitted to "possessing" either of those controlled substances. Based on 5th Circuit case law, the Court can find that illicit drug use constitutes possession. *United States v. Courtney*, 979 F.2d 45 (5th Cir. 1992). This distinction between use and possession is material for Mr. Houston—if the Court finds he possesses these illicit

5

substances, he would be guilty of committing a Grade B violation with a guideline imprisonment range of 18-24 months. Alternatively, if the Court only found use and not possession, Mr. Houson's highest violation would be a Grade C, resulting in a guideline range of 7-13 months.

Here, the reasonable conclusion is that Defendant, who admitted to using methamphetamine, possessed methamphetamine immediately prior to consumption. Though Ms. Smith admitted on cross that she did not know the *amount* of methamphetamine (or fentanyl) he possessed, a person who knowingly ingests drugs nearly always possessed them as well. *Courtney*, 979 F.2d at 49 ("But once the court finds a substance has been voluntarily and knowingly ingested, then, at least in almost any imaginable circumstance, it necessarily follows that the defendant has possessed the substance."). Defendant provided no evidence or prevailing argument to rebut the reasonable inference; that is, he never provided a reason to conclude that he never "possessed" the illicit drug he admitted to taking.

## **FINDINGS**

The Court, having considered the petition, hearing arguments of counsel, and the testimony presented at the hearing, finds by a preponderance of the evidence Defendant violated certain conditions of his supervised release as alleged in the U.S. Probation Office's petition, namely Allegations (2), (3), and (4). The Government abandoned Allegation (1) due to not obtaining the video evidence. The Government failed to show that Defendant violated Allegations (5) and (6) because of uncertainty regarding his scheduling and Defendant's continued appearances at the sessions. Specifically, the undersigned finds as follows:

Regarding Allegation (1), concerning criminal trespass, Ms. Smith testified that she has not reciieved the video evidence and thus the Government is abandoning this allegation. For this reason, the Government has not shown by a preponderance of the evidence that Defendant violated the conditions of his release.

Regarding Allegation (2) concerning the use of controlled substances on June 26, 2024, and July 12, 2024, (Allegation 2), Ms. Smith persuasively testified that Defendant tested positive and signed a violation admittance to the use of methamphetamine. The Government showed by a preponderance of the evidence that Defendant violated conditions of his release. Further, the Government established that Mr. Houston possessed methamphetamine, resulting in a Grade B violation.

Regarding Allegation (3), concerning Defendant's failure to appear at the U.S. Probation Office on April 30, 2024, Ms. Smith persuasively testified that she texted Defendant and received a response that more likely than not came from Defendant; Defendant did not appear. Thus, the Government showed by a preponderance of the evidence that Defendant violated a condition of his release.

Regarding Allegation (4) concerning the consumption of alcohol on May 29, 2024, Defendant admitted to alcohol consumption. The Government showed by a preponderance of the evidence that Defendant violated a condition of his release.

Regarding Allegations (5) and (6), concerning Defendant's failure to participate in substance abuse and mental health treatment on May 24 and 31, 2024, based on the limited information to the Court, it is not clear why Defendant did not appear both days or that whether the notifications of missed sessions resulted from a single missed session, two missed sessions, or four missed sessions. Defendant also apparently continued to attend after missing these sessions. Due to this uncertainty and Defendant's apparent continued compliance, the Government has not shown Defendant was not compliant as alleged in Allegations (5) and (6).

Based on the above, the undersigned recommends a sentence of 14 months imprisonment followed by a supervised release term of 18 months. The term of imprisonment is below the sentencing guideline of 18-24 months. This departaure is warranted in this case due to the (1)

abnormally long time he has served in jail prior to the hearing (around nine months), where, according to the testimony, he has shown improvement concerning his mental health; (2) the testimony showed had periods of compliance on supervision before and after his incidents of non-compliance; and (3) family support who are professionally trainy in healthcare and substance abuse issues.

## RECOMMENDATION

Pursuant to the Sentencing Reform Act of 1984, the Court recommends that Defendant's supervised release be revoked and that he be committed to the custody of the Bureau of Prisons to be imprisoned for a term of fourteen (14) months, with credit for time served since July 22, 2024, with an eighteen (18) month term of supervised release to follow.

The Court recommends that the following conditions be imposed:

Defendant must report to the probation office in the federal judicial district where Defendant is authorized to reside within 72 hours of Defendant's release from imprisonment unless the probation officer instructs Defendant to report to a different probation officer or within a different time frame.

While on supervised release, Defendant must not commit another federal, state, or local crime. Defendant must not unlawfully possess a controlled substance. Defendant must refrain from any unlawful use of a controlled substance. Defendant must submit to one drug test within fifteen (15) days of release from imprisonment and at least two other periodic drug tests thereafter, as determined by the Court.

Defendant must comply with the standard conditions that have been adopted by the Court.

Additionally, the special conditions originally imposed by the Court are still relevant and are reimposed as follows:

Defendant must take all mental health medications that are prescribed by Defendant's

treating physician. Defendant must pay the costs of the medication.

Defendant must participate in any combination of psychiatric, psychological, or mental health treatment programs, and follow the rules and regulations of that program, until discharged. This includes taking any mental health medication as prescribed by Defendant's treating physician. The probation officer, in consultation with the treatment provider, will supervise Defendant's participation in the program. Defendant must pay any cost associated with treatment and testing.

Defendant must participate in a program of testing and treatment for substance abuse and follow the rules and regulations of that program until discharged. The probation officer, in consultation with the treatment provider, will supervise Defendant's participation in the program. Defendant must pay any cost associated with treatment and testing.

Defendant must not use alcohol.

Defendant must not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances, including synthetic marijuana or bath salts, that impair a person's physical or mental functioning, whether or not intended for human consumption, except as with the prior approval of the probation officer.

The Court finally recommends that Defendant be housed FCI Seagoville or in some location close to the Dallas Fort-Worth area.

## **OBJECTIONS**

The parties were informed of the right to file objections to the recommendations as set forth above. Defendant did not waive his right to object. Defendant will have fourteen (14) days to object to the above recommendations. To speed the time for entry of final judgment, Defendant may file a notice that he does not object to the conditions at any time during the 14-day objection period.

Defendant is also advised that he has the right to be present with counsel, to speak on his own behalf, and to have counsel speak on his behalf before any additional sentence is imposed.

SIGNED this the 25th day of April, 2025.

_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE